USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

LLOYD GORDON,

Defendant.

No. 18-cr-373-2 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Now before the Court is Defendant Lloyd Gordon's supplemental sentencing submission, dated September 6, 2019, (1) arguing that the government breached the parties' January 30, 2019 plea agreement by notifying Probation that Defendant was responsible for a drug weight that was greater than the weight to which the parties stipulated, and (2) requesting that this case be transferred to another judge for sentencing in light of the alleged breach. (Doc. No. 487.) For the reasons set forth below, the Court concludes that the government did not breach the plea agreement, and that even if there were a breach, transferring this case would not be warranted.

I. BACKGROUND

Defendant was the first of fifteen defendants to plead guilty in this case.[1] Specifically, on February 19, 2019, Defendant pleaded guilty to one count of conspiring to distribute or possess with intent to distribute 28 grams or more of cocaine base ("crack"), in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846, pursuant to a January 30, 2019 plea agreement with the government. (Doc. Nos. 232, 487-2.) The plea agreement stated that "the offense involved

---

[1] All of Defendant's codefendants have since entered guilty pleas, except for Ernest Murphy, who proceeded to a jury trial on August 12, 2019, and was found guilty on all counts.

approximately 525 grams of [crack]," which, in combination with other facts, resulted in a total offense level of 27 under the United States Sentencing Guidelines. (Doc. No. 487-2 at 2.) The plea agreement also stated, "[b]ased upon the information [then] available to [the government]," that Defendant had four criminal history points, putting him in criminal history category III. (*Id.* at 3.) The parties thus agreed that, "[b]ased upon the calculations set forth above, . . . [D]efendant's Guidelines sentencing range [was] 87 to 108 months' imprisonment." (*Id.*) In addition, the parties agreed that they would not "in any way suggest that the Probation Office or the Court consider . . . a departure or adjustment under the Guidelines," except as set forth in the plea agreement. (*Id.*) However, the plea agreement provided that "nothing in [it] limits the rights of the parties . . . to present to the Probation Office or the Court any facts relevant to sentencing." (*Id.* at 4.)

After Defendant pleaded guilty, in the course of prosecuting Defendant's coconspirators, the government obtained information from a cooperating witness indicating that Defendant had supplied the conspiracy with crack from at least 2017 until the time of Defendant's arrest in May 2018 – a longer period of time than the government had used to calculate the stipulated drug weight of 525 grams. (Doc. No. 499 at 3.) The cooperating witness also informed the government that Defendant supplied approximately 28 to 100 grams of crack to codefendant Tyshawn Burgess on a biweekly basis. (*Id.*) The new information regarding the duration of Defendant's conduct supported a revised drug weight that was "nearly doubl[e]" the 525 grams to which the parties stipulated in the plea agreement (*id.*), which in turn supported a two-level increase in Defendant's offense level, *see* U.S.S.G. § 2D1.1(c)(4).[2] When Probation requested that the government provide a summary of Defendant's offense conduct for purposes of preparing the presentence report

---

[2] The Court assumes for the purposes of this Order that all information regarding the increased drug weight discussed herein is accurate. However, the Court has not yet made a finding on this factual issue, and, as set forth below, Defendant may dispute it and seek a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053, 1057, 1057 n.9 (2d Cir. 1979).

2

("PSR"), the government provided a summary that included the above information obtained from the cooperating witness, but the government did not use that information to calculate an increased drug weight or offense level in the summary itself. (*See id.* at 3–4.) Probation, in turn, included the new information in the offense conduct section of the PSR that it initially disclosed to the parties on May 1, 2019, but likewise did not recalculate the drug weight; thus, the initial PSR stated that Defendant was responsible for the 525 grams to which the parties stipulated. (*Id.* at 4.)

Shortly thereafter, the government provided Probation with a supplemental offense summary that included both (1) an analysis of the drug weights trafficked by the conspiracy based on the wiretaps during the investigation – approximately 14.15 grams per week, consistent with the low end of the cooperating witness's estimate that Defendant supplied Burgess with 28 to 100 grams biweekly – as well as (2) a revised calculation that Defendant was responsible for approximately one kilogram of crack (14.15 grams per week for 71 weeks). (*Id.*) The Probation Officer asked the government whether the next version of the PSR should reflect the wiretap analysis, and the government responded that it should. (*Id.*) The offense conduct section of the revised PSR, dated May 31, 2019, thus included information from the wiretap analysis indicating that the conspiracy trafficked 14.15 grams of crack per week. (Doc. No. 341 at 10 ¶ 26; *see also id.* at 24 ("The [g]overnment provided additional information relating to the offense conduct resulting in the revision or addition of Paragraphs 13 and 18 through 33 . . . .").) The PSR's Guidelines calculation, however, again stated that Defendant was responsible for only 525 grams of crack. (*Id.* at 11–12 ¶ 42.) Thus, Defendant's total offense level remained 27.[3] (*Id.* at 12 ¶ 51.)

---

[3] With respect to Defendant's criminal history category, the May 31, 2019 PSR stated that Defendant was in category IV, rather than category III as the parties had stipulated to in the plea agreement, in light of a February 12, 1999 arrest that the parties apparently overlooked during the plea negotiations. (Doc. No. 341 at 20 ¶ 104.) Thus, the May 31, 2019 PSR calculated Defendant's Guidelines range as 100 to 125 months' imprisonment. (*Id.* at 20 ¶ 103.) Defendant does not argue that the government breached the plea agreement with respect to his criminal history category.

3

Defendant represents, and the government does not dispute, that after reviewing the May 31, 2019 PSR, the government notified Probation that the drug weight of 525 grams should be approximately doubled to reflect one kilogram – resulting in a two-level increase to Defendant's offense level – based on the weekly drug weight attributable to Defendant and the approximate number of weeks he was supplying the conspiracy with crack. (Doc. Nos. 487 at 5, 8; 509 at 8.) On June 11, 2019, Probation submitted a revised final PSR that adopted the government's calculation that Defendant was responsible for one kilogram of crack. (Doc. No. 355 at 10 ¶ 26; *see also id.* at 26 ("Paragraphs 26 and 27 were added and Paragraph[] 30 as well as the Offense Level Computation Sentencing Options[] and Recommendation were revised to reflect the corrected drug weight attributable to the defendant.").) Thus, the June 11, 2019 final PSR stated that Defendant's total offense level was 29, not 27, resulting in a Guidelines range of 121 to 151 months. (*Id.* at 20 ¶ 105.)

With sentencing scheduled for August 8, 2019, Defendant filed his original sentencing submission on July 25, 2019 (Doc. No. 390), and the government filed its submission on August 5, 2019 (Doc. No. 408). As relevant here, Defendant argued that "the government suggest[ed] a higher base offense level" to Probation, in violation of the plea agreement, by "affirmatively providing [it] with unsolicited amplified quantities" of crack. (Doc. No. 390 at 10–11.) The government, for its part, stated that Defendant was responsible for one kilogram of crack, and that Probation therefore correctly calculated Defendant's Guidelines range to be 121 to 151 months. (Doc. No. 408 at 2.) Nonetheless, the government requested that the Court impose "a sentence within the Stipulated Guidelines sentencing range of 87 to 108 months' imprisonment." (*Id.* at 4.) The government did not address whether it had breached the plea agreement. (*See id.*)

On August 8, 2019, after hearing argument from the parties, the Court adjourned sentencing *sine die* and ordered briefing on (1) whether the government breached the plea agreement, and if so, what would be the appropriate remedy for such breach; and (2) whether Defendant disputed the drug weight and criminal history information set forth in the revised final PSR, and if so, whether Defendant sought a hearing pursuant to *United States v. Fatico*, 603 F.2d 1053, 1057, 1057 n.9 (2d Cir. 1979). (Doc. No. 420.) Defendant filed his supplemental sentencing submission on September 9, 2019 (Doc. No. 487), the government filed its response on September 20, 2019 (Doc. No. 499), and Defendant filed his reply on September 27, 2019 (Doc. No. 509).

## II. Discussion

The Court will address the issues of breach and remedy in turn.

### A. Breach

Defendant argues that the government breached the parties' plea agreement by providing Probation with unsolicited information regarding the drug weight attributable to him for purposes of his Guidelines calculation. The government responds that there was no breach because the terms of the plea agreement put Defendant on notice that the government could apprise Probation of any facts relevant to sentencing; the government also notes that the relevant facts were discovered only after Defendant pleaded guilty, and were first provided to Probation in response to a request for a summary of Defendant's offense conduct. The Court agrees with the government.

The terms of a plea agreement are to be interpreted "in accordance with principles of contract law." *United States v. Riera*, 298 F.3d 128, 133 (2d Cir. 2002). To determine whether a plea agreement has been breached, the Court "looks to the reasonable understanding of the parties as to the terms of the agreement." *United States v. Colon*, 220 F.3d 48, 51 (2d Cir. 2000). "Because the government ordinarily has certain awesome advantages in bargaining power, any ambiguities

5

in the agreement must be resolved in favor of the defendant." *Riera*, 298 F.3d at 133 (internal quotation marks and citation omitted); *see also United States v. Mergen*, 764 F.3d 199, 208 (2d Cir. 2014) (recognizing that "courts construe plea agreements strictly against the [g]overnment").

Of course, as the Second Circuit has recently recognized, there is a "tension between, on the one hand, defendants' 'reasonable reliance' on the sentences as estimated in their plea agreements, and, on the other, the [g]overnment's need to maintain flexibility in its sentencing decisions in the event of mistakes, oversights, or new information." *United States v. Wilson*, 920 F.3d 155, 163 (2d Cir. 2019). "To resolve this tension," the Court looks "both to the precise terms of the plea agreements and to the parties' behavior." *Id.* "A defendant's reasonable expectations may be breached . . . where the [g]overnment's deviation produces serious unfairness for the defendant." *Id.* (internal quotation marks, citation, and brackets omitted). This assessment is necessarily fact-specific, given that "the number of significant variables potentially in play in such an inquiry is enormous." *United States v. Habbas*, 527 F.3d 266, 272 (2d Cir. 2008).

Here, under the plain meaning of the parties' plea agreement, the government was able to provide Probation with correct factual information concerning the drug weight attributable to Defendant. Although the parties stipulated that "the base offense level [was] 30 because the offense involved approximately 525 grams of cocaine base," the parties also agreed that "nothing in [the plea agreement] limit[ed] the right of the parties to present to the Probation Office or the Court any facts relevant to sentencing." (Doc. No. 487-2 at 2, 4.) The Second Circuit has repeatedly interpreted identical language contained in other plea agreements in this district as allowing the government to provide Probation or the Court with facts beyond – and, at least in one instance, even inconsistent with – what was set forth in the parties' plea agreement. *See, e.g., United States v. Washington*, 297 F. App'x 62, 63 (2d Cir. 2008) (finding no breach where the

government's sentencing memorandum recited, *inter alia*, a higher restitution amount than that set forth in the plea agreement); *see also United States v. Robinson*, 634 F. App'x 47, 50–51 (2d Cir. 2016) (explaining, in dicta, that "[h]ad the government confined itself to a recitation of the facts – or even to a § 3553(a) argument based on the facts – there would have been no breach of the plea agreement even if those facts demonstrated that a role enhancement was proper"); *United States v. Tokhtakhounov*, 607 F. App'x 8, 11 (2d Cir. 2015) (concluding that the government did not breach the plea agreement when, in its sentencing memorandum, it described defendants as leaders of the criminal enterprise but did not expressly mention the leadership role enhancement).[4]

While the plain language of the plea agreement therefore put Defendant on notice that the government was able to provide relevant factual information to Probation, there are additional reasons why the government's conduct in this case did not breach "[D]efendant's reasonable expectations." *Wilson*, 920 F.3d at 163. First, as noted above, this is not a case where the government was aware of relevant factual information at the time of the plea agreement and simply neglected to bring it up until later.[5] In such a case, even if the plain meaning of the plea agreement would seem to allow the government to disclose correct facts that differed from a stipulation in the plea agreement, the government might nevertheless breach the agreement by "act[ing] in bad faith" or by "chang[ing] the defendant's exposure so dramatically as to raise doubts whether the

---

[4] While these cases are non-precedential and thus not binding on the Court, their conclusions are consistent with the Court's interpretation of the plain meaning of identical language in the parties' plea agreement in this case, and the Court finds them to be persuasive. *See, e.g., Mendez v. Starwood Hotels & Resorts Worldwide, Inc.*, 746 F. Supp. 2d 575, 595 (S.D.N.Y. 2010) ("[A] summary order has no precedential effect on any court, although it has to be deemed some indication of how the Court of Appeals might rule were it to decide the issue in a binding opinion."); *cf. United States v. Payne*, 591 F.3d 46, 58 (2d Cir. 2010) ("Our denying summary orders precedential effect does not mean that the court considers itself free to rule differently in similar cases." (internal quotation marks and brackets omitted)).

[5] In his supplemental reply brief, Defendant questions "the 'newness' of the information," noting that the one-kilogram drug weight set forth in the revised final PSR was based in part on an analysis of wiretaps that the government had long possessed. (Doc. No. 509 at 8.) However, the wiretap analysis related only to the quantity of crack trafficked by the conspiracy each week (Doc. No. 499 at 4), not to the length of time that Defendant supplied the conspiracy with crack, which was the new information provided by the cooperating witness after Defendant pleaded guilty.

7

defendant could reasonably be seen to have understood the risks of the agreement." *Id.* Here, however, the government simply apprised Probation of newly discovered relevant facts.

Second, the Court's interpretation of the plain meaning of the plea agreement as allowing the government to provide Probation with updated factual information accords with both the Guidelines framework and the well-recognized legal and ethical duties of counsel, particularly the prosecutor, at sentencing.[6] *See* U.S.S.G. § 6B1.4(a)(2) (Policy Statement) (providing that stipulations in plea agreements "shall . . . not contain misleading facts"); *id.* commentary ("[I]t is not appropriate for the parties to stipulate to misleading or non-existent facts, even when both parties are willing to assume the existence of such 'facts' for purposes of litigation. Rather, the parties shall fully disclose the actual facts . . . ."); *United States v. Fagge*, 101 F.3d 232, 234 (2d Cir. 1996) ("An agreement to keep the judge ignorant of pertinent information cannot be enforceable, because a sentencing court must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." (brackets omitted) (quoting *United States v. Williamsburg Check Cashing Corp.*, 905 F.2d 25, 28 (2d Cir. 1990)); *see also United States v. Aragon*, 922 F.3d 1102, 1114 (10th Cir. 2019) (Holmes, J., concurring) ("I write to emphatically underscore that any [plea] agreement [that involved intentionally concealing evidence of drug weight from the court] would be improper," since "such an agreement would undercut the district court's ability to perform its role in the sentencing framework contemplated by the [Guidelines] and would also violate counsel's ethical duty of candor to the tribunal."); *United States v. Read*, 778 F.2d 1437, 1442 (9th Cir. 1985)

---

[6] The Court notes, however, that if the government *had* promised to withhold relevant factual information from the Court, then "[t]he government's duty of candor [would] not excuse or remedy a breach of a plea agreement." *United States v. Mizell*, 671 F. App'x 826, 830 (2d Cir. 2016); *see also Cook*, 668 F.2d at 320 ("Regardless of whether the [g]overnment has the authority to withhold relevant information, if it did in fact promise to do so, then [the defendant] is nevertheless entitled to relief.").

8

("[A]ny time a prosecutor is aware that the court is about to impose sentence based upon incomplete or inaccurate information, the prosecutor has the duty to inform the court of the correct or missing information." (internal quotation marks and citation omitted)); *United States v. Cook*, 668 F.2d 317, 320 & n.4 (7th Cir. 1982) ("[W]e . . . entertain substantial doubt as to whether the [g]overnment could lawfully withhold relevant information from the sentencing court. . . . The very nature of the sentencing process would seem to preclude such an agreement."); *United States v. Block*, 660 F.2d 1086, 1092 (5th Cir. 1981) ("[T]he [g]overnment does not have a right to make an agreement to . . . withhold relevant factual information from the court. Such an agreement not only violates a prosecutor's duty to the court but would result in sentences based upon incomplete facts or factual inaccuracies, a notion that is simply abhorrent to our legal system."). It should thus come as no surprise that the plea agreement's relevant clause – that "nothing in this Agreement limits the rights of the parties" to present the Court with "facts relevant to sentencing" – would allow the government to disclose newly discovered facts that differ from the parties' stipulations. (Doc. No. 487-2 at 4.)

Nevertheless, Defendant argues that the government was precluded from notifying Probation of the correct drug weight because other provisions of the plea agreement expressly allowed the government to apprise the Court of subsequently discovered facts, thus negatively implying that the drug weight could not be so revised. The criminal history section of the plea agreement, for example, calculated Defendant's criminal history points "[b]ased upon the information now available to [the government]," and the sentencing range section allowed "the parties . . . to seek an appropriately adjusted Guidelines range if it [were] determined based upon new information that the defendant's criminal history category [was] different from that set forth above." (Doc. No. 487-2 at 3–4.) While Defendant's argument is not specious, it cannot bear the

heavy weight placed on it; a negative inference from the inclusion of certain phrases must give way where, as here, a contrary meaning is plain from the text of the agreement. *See Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 156 (2013) (explaining that the negative-implication rule "is no more than a rule of thumb that can tip the scales when a statute could be read in multiple ways" (internal quotation marks and brackets omitted)); *see also Rockland Exposition, Inc. v. Great Am. Assur. Co.*, 746 F. Supp. 2d 528, 537 n.8 (S.D.N.Y. 2010) ("It is not uncommon for courts interpreting contracts to rely on the same principles that guide statutory construction." (collecting cases)), *aff'd*, 445 F. App'x 387 (2d Cir. 2011); *cf. JA Apparel Corp. v. Abboud*, 568 F.3d 390, 406 n.2 (2d Cir. 2009) (Sack, J., concurring) (noting that, under the Restatement (Second) of Contracts, "[t]he rule against surplusage is said to be a rule 'of preference in interpretation,' which applies only after it is established that a term has more than one reasonable interpretation"). As explained above, the plea agreement in this case plainly and unambiguously permitted the parties to provide Probation and the Court with "any facts relevant to sentencing." (Doc. No. 487-2 at 2, 4.) Accordingly, and because the government did not engage in bad faith or otherwise act in a manner that violated Defendant's reasonable expectations, the Court concludes that the government did not breach the plea agreement by providing Probation with newly discovered facts concerning the relevant drug weight.

## B. Remedy

Although the government concedes that the remedy for a breach of the agreement would be to transfer this case to a different judge for sentencing, the Court is not bound by that concession. *See United States v. Castillo*, 896 F.3d 141, 149 (2d Cir. 2018) ("It is well-established that a court cannot properly determine a question of law on the basis of a party's concession, even a concession by the government." (internal quotation marks and footnote citations omitted)). The Court does

10

not agree with the parties as to the appropriate remedy for any breach here. Even assuming the government breached the plea agreement, any such breach would be immaterial and thus would not require transferring this case, since the Court would have discovered the correct drug weight even if the government had not disclosed it first to Probation in advance of sentencing.

The Second Circuit has recognized an exception "to the need for a remedy for a plea agreement breach by the government where the violation is so minor that it does not cause the defendant to suffer any meaningful detriment." *United States v. Vaval*, 404 F.3d 144, 155 (2d Cir. 2005); *see also* Restatement (Third) of Restitution and Unjust Enrichment § 37 (2011) (discussing rescission as a remedy for *material* breach); Restatement (Second) of Contracts §§ 237, 241 (1981) (material breach doctrine). "In assessing whether a defendant suffered a meaningful detriment, the critical question is what the defendant reasonably understood to be the terms of the plea agreement, and whether his or her reasonable expectations have been fulfilled." *Vaval*, 404 F.3d at 155. In *United States v. Casamento*, for example, no remedy was required where the government breached a plea agreement "by submitting a sentencing memorandum without specifically reserving its right to do so," since "the memorandum included only brief statements that could properly have been presented to the district court as rebuttal to defendant's arguments." *Id.* at 155 (internal quotation marks and brackets omitted) (citing *United States v. Casamento*, 887 F.2d 1141, 1181 (2d Cir. 1989)). The Second Circuit specifically noted that, while the "memorandum . . . may well have [affected the defendant's sentence]," there was "no prejudice because the government reserved the right to respond to any arguments defendant might have made, and the statements made by the government could have been presented to the court as permissible rebuttal arguments . . . so the essential elements of the agreement were fulfilled." *Id.* at 155 n.5.

Here, Defendant likewise did not suffer any "meaningful detriment" from the government's disclosure of the revised drug weight to Probation, given that (1) the government expressly "reserve[d] the right to answer any inquiries and to make all appropriate arguments concerning," *inter alia*, "calculations different from those stipulated to [in the plea agreement]" (Doc. No. 487-2 at 4), and (2) the Court certainly would have inquired at sentencing into the basis for the PSR's drug weight calculation. Indeed, the Court has made such an inquiry at every other sentencing of a defendant who pleaded guilty to narcotics trafficking in this fifteen-defendant case to date. (Doc. Nos. 478 at 9:15–10:19 (Rhodes); 513 at 20:1–4, 24:23–33:4 (Felix); 533 at 5:5–7, 26:1–21 (Bayer); 592 at 11:13–13:19 (Royster).)[7] It would make little sense to hold that the government's disclosure of the newly discovered drug weight to Probation in advance of sentencing would require transferring this case to a different judge, presumably with a revised PSR omitting the correct drug weight, when in fact the Court could and would have relied on the newly discovered drug weight after making its routine inquiry at sentencing. Thus, the Court concludes that, even assuming the government breached the plea agreement, such a breach was immaterial and does not require transferring this case to a different judge for sentencing.

III. CONCLUSION

For the foregoing reasons, Defendant's request to transfer this case to a different judge for sentencing is DENIED. Although the Court previously directed Defendant to state whether he wished to withdraw his guilty plea and whether he disputed the drug weight or criminal history category set forth in the revised final PSR, Defendant has not yet taken a position on these issues. (Doc. No. 487 at 21.) With respect to withdrawing the guilty plea, the Court notes that due to the

---

[7] The Court notes that drug weight was not relevant to the Guidelines calculation for Defendants Robinson and Wilson, who both pleaded guilty only to firearms offenses under 18 U.S.C. § 924. Even so, the Court inquired into whether an upward departure or variance was warranted for Robinson – who, unlike Wilson, was not deemed a career offender under the Guidelines – based in part on the drug weight attributable to him. (Doc. Nos. 434; 457 at 23:6–18.)

12

Court's conclusion that no breach (let alone material breach) occurred, withdrawal is not *required* as a remedy for any breach, *see Vaval*, 404 F.3d at 155; nevertheless, Defendant may renew his request to withdraw his guilty plea if he wishes to do so, *see* Fed. R. Crim. P. 11(d)(2)(B) ("A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal.").

Accordingly, IT IS HEREBY ORDERED THAT Defendant shall apprise the Court, no later than February 10, 2020, whether he (1) wishes to withdraw his guilty plea; (2) disputes the drug weight and/or criminal history category set forth in Probation's June 11, 2019 revised final PSR; and (3) seeks a *Fatico* hearing to resolve any remaining factual disputes. If Defendant seeks a *Fatico* hearing, Defendant shall propose a date and time at which the parties are available for the hearing; otherwise, Defendant shall propose a date and time for sentencing.

SO ORDERED.

Dated: February 3, 2020
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation