UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA | |
|---|---|
| -v- | No. 18-cr-373-2 (RJS) |
| LLOYD GORDON, | OPINION AND ORDER |
| Defendant. | |

RICHARD J. SULLIVAN, Circuit Judge:

Defendant Lloyd Gordon moves for a temporary release from custody pending his sentencing in light of the ongoing COVID-19 pandemic. (Doc. No. 642 ("Gordon Ltr.").) The government opposes that motion. (Doc. No. 645 ("Gov't Ltr.").) For the reasons set forth below, Gordon's motion is DENIED.

**I. Background**

On February 19, 2019, Gordon pleaded guilty pursuant to a plea agreement with the government to one count of conspiring to distribute 28 grams or more of cocaine base. (Doc. No. 232.) As a result of his guilty plea, Gordon now faces a mandatory minimum term of imprisonment of five years and a maximum term of imprisonment of 40 years. 21 U.S.C. §§ 841(b)(1)(B), 846. According to the terms of their plea agreement, the parties stipulated to a sentencing guidelines range of 87 to 108 months. However, the Probation Office has concluded that Gordon's guidelines range is 121 to 151 months, and has recommended that the Court impose a sentence of 121 months. Since his arraignment, Gordon has been held in custody at the Metropolitan Detention Center (the "MDC"), a federal jail in Brooklyn, New York.

On April 2, 2020, Gordon requested a "temporary release into the custody of . . . his brother, under 18 U.S.C. § 3145(c)." (Gordon Ltr. at 1.) Gordon argues that "[h]is underlying medical condition [asthma] and the threat COVID-19 poses to vulnerable inmates constitutes an 'exceptional reason[]' for why his detention is not appropriate." (*Id.*) The government opposed Gordon's motion, arguing that he is both a flight risk and a danger to the community, and that the current pandemic does not warrant such extraordinary relief.

## II. Discussion

In general, a defendant like Gordon who is convicted of a drug offense with a maximum term of imprisonment greater than 10 years must be detained prior to sentencing. 18 U.S.C §§ 3142(f)(1)(C), 3143(a)(2). But under section 3145(c), a district court has the authority to order the release of such a defendant so long as he is neither a flight risk nor a danger to the community, and "it is clearly shown that there are exceptional reasons why [the defendant's] detention would not be appropriate." 18 U.S.C. § 3145(c); *see United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004). Only if all three showings are made is a defendant eligible for temporary release under section 3145(c).

Even if the Court assumes that the COVID-19 threat constitutes an "exceptional" circumstance – *i.e.*, that Gordon is both more likely to contract COVID-19 because of his incarceration *and* is at acute risk of serious illness due to his asthma[1] if he were to contract the virus – release is still not permissible because Gordon poses both a risk of flight and a danger to the community. As a result, Gordon is ineligible for release under section 3145(c).

---

[1] According to the Presentence Investigation Report ("PSR"), Gordon "reported that he was diagnosed with asthma as a child and currently has an inhaler. He reported no consistent concerns." (PSR ¶ 79.)

2

Substantially for the reasons set forth in the government's submission (Gov't Ltr. at 2–3), the Court regards Gordon as presenting far too great a risk of flight and danger to the public to permit his release.[2] First, Gordon has a significant criminal history, including convictions for, among other things, attacking a victim with a razor and assaulting a woman at a casino. (PSR ¶¶ 53–58.) In addition, Gordon has an extensive history of drug dealing. Indeed, Gordon sustained three felony drug convictions in the span of nine years, indicating that he was not deterred by punishment and that he poses a significant risk of resuming such activity if he were to be released. (*Id.* ¶¶ 53–54, 56.) As the government notes, "drug dealing requires only a cellphone, and home incarceration would not prevent [Gordon] from easily resuming [his] criminal conduct." (Gov't Ltr. at 2.)

Moreover, the Court is not convinced that conditioning Gordon's release on home detention with 24/7 electronic monitoring would prevent Gordon from fleeing or eliminate the risk he poses to his community. Gordon has displayed no hesitation in flouting court-imposed conditions in the past. He has twice before had his parole revoked, and he committed the instant offense while under supervision following a prior conviction in 2017 for assault. (PSR ¶¶ 53, 56, 60.) True enough, flight is now more complicated in light of the travel and commercial restrictions brought on by the COVID-19 pandemic. *See United States v. Fellela*, No. 19-cr-79 (JAM), 2020 WL 1457877, at *1 (D. Conn. Mar. 20, 2020). But Gordon has significant motive to flee, since he is now facing a minimum sentence of five years, a sentencing guidelines range of 121 to 151 months, and the certainty of lengthy incarceration given that he has already pleaded guilty to this serious felony. *See United States v. Blanco*, 570 F. App'x 76, 77 (2d Cir. 2014) (recognizing that

---

[2] Gordon himself offers no explanation for why he would not present a danger to his community other than stating that "the proposed bond and accompanying conditions satisfy § 3143(a)'s concerns." (Gordon Ltr. at 6.)

3

"a mandatory minimum prison sentence of five years [and] a possible maximum sentence of 40 years . . . provid[e] [a defendant] with a strong motive to flee"). Indeed, it bears noting that Gordon has never previously requested bail in this matter, reflecting the obvious conclusion that his prior criminal history and the nature of the current charges undermine any possible arguments that he did not pose a risk of flight or a danger to the community.

Thus, while the Court recognizes the danger COVID-19 poses to inmates generally and to Gordon in particular, the Court nevertheless finds that Gordon is ineligible for release because he does not meet the conditions specified by sections 3143(a)(1) and 3145(c). *See id.* (noting that a defendant facing a significant prison sentence may pose a flight risk); *United States v. English*, 629 F.3d 311, 322 (2d Cir. 2011) (acknowledging that bail was properly denied where "electronic monitoring did not eliminate the danger that [the defendant] would 'engage in further sale of narcotics' by telephone with a willing collaborator"); *United States v. Landji*, No. 18-cr-601 (PGG), 2020 WL 1674070, at *4 (S.D.N.Y. Apr. 5, 2020) (concluding that defendant's involvement in a "large-scale drug trafficking organization" rendered him a "danger to the community"); *United States v. Steward*, No. 20-cr-52 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (denying application under section 3142(i) in part because "the defendant's release into the community would endanger the safety of the community"); *United States v. Green*, No. 12-cr-83S (HBS), 2014 WL 2573325, at *2–3 (W.D.N.Y. June 9, 2014) (concluding that the defendant was a flight risk based in part on prior parole violations). "Simply put, the danger to the community presented by [Gordon's] release outweighs, substantially, the danger to himself presented by his incarceration at [the MDC]." *United States v. Chambers*, No. 20-cr-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) (quoting *United States v. Conley*, No. 19-cr-131 (PAE) (S.D.N.Y. Mar. 31, 2020), ECF No. 366 at 2–3).

### III. Conclusion

Although the Court is certainly sympathetic to Gordon's concerns during this unprecedented national health emergency, the fact remains that the requirements of sections 3143(a)(1) and 3145(c) compel his continued detention. Accordingly, IT IS HEREBY ORDERED THAT Gordon's motion for temporary release pending sentencing is DENIED. The Clerk of Court is respectfully directed to terminate the motion pending at document number 642.

SO ORDERED.

Dated: April 10, 2020
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation